IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Frances M. Bellingrath Atkins, ) | |
| ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | |
| ) | |
| United States of America by and ) | |
| through the Commissioner of the Internal ) | |
| Revenue Service, and Pratt-Thomas & Gumb, ) | Case No.: 2:06-900-CWH |
| P.A. ) | |
| ) | |
| Defendants. ) | |
| _____) | **ORDER** |
| ) | |
| Pratt-Thomas & Gumb, P.A. ) | |
| ) | |
| Third-Party Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Charles A. Atkins, ) | |
| ) | |
| Third-party Defendant ) | |
| _____) | |

This matter is before the Court on cross motions for summary judgment by the Internal Revenue Service and the plaintiff, the plaintiff's motion to take the deposition of Charles A. Atkins, and a motion for summary judgment by Pratt-Thomas & Gumb, P.A. ("Pratt-Thomas") for the payment of management fees.

Facts and Procedural History

Beginning in 1978, Charles A. Atkins ("Mr. Atkins") was a successful investment banker and a partner in a general partnership named "The Securities Group." The plaintiff married Mr. Atkins in 1981. Mr. Atkins filed individual income tax returns for the 1978, 1979, and 1982 tax years. The plaintiff and Mr. Atkins filed a joint return for the 1981 tax year.

Mr. Atkins's business subsequently collapsed. The Internal Revenue Service ("IRS") disallowed partnership related expenses Mr. Atkins had deducted from his taxable income in 1978, 1979, 1981, and 1982. Therefore, Mr. Atkins incurred significant tax liabilities during these four tax years. The IRS determined that the plaintiff was jointly liable for the tax liability incurred during the 1981 tax year.

On October 25, 2002, the IRS filed tax liens against Mr. Atkins for the 1978, 1979, 1981, and 1982 tax deficiencies. The IRS also filed a tax lien against the plaintiff for the 1981 tax deficiency.

The plaintiff and Mr. Atkins remained married until 2003, when the plaintiff moved out of the marital home located in Charleston, South Carolina. Mr. Atkins subsequently filed a complaint for a divorce. The plaintiff and Mr. Atkins consented to arbitrate the divorce.

On November 24, 2003, the arbitrator issued an award. The arbitrator found that the plaintiff enjoyed the income earned in 1981 and 1982, and he deemed the tax debt incurred during those two years as marital debt creating joint liability for the debt between the plaintiff and Mr. Atkins. The 1981 and 1982 tax debt is hereinafter referred to as the marital tax debt.

The arbitrator deemed the house located in Charleston as marital property. The award indicates that the plaintiff and Mr. Atkins agreed that the proceeds from the sale of the house should be used to satisfy the marital tax debt. Arbitration award, § II(B)(1)(i), p.13. The award allows the plaintiff and Mr. Atkins to divide equally any proceeds remaining from the sale of the house after the marital tax debt is satisfied. Id.

The marital residence was subsequently sold and the proceeds deposited in an escrow

account managed by Pratt-Thomas.[1] On January 20, 2006, the IRS issued a notice to Pratt-Thomas of an intent to levy the escrow account. This notice named Mr. Atkins as the taxpayer and listed the following amounts due:

| | | |
|---|---|---|
| 1. | 1978 | $273,579.64 |
| 2. | 1979 | $845,877.86 |
| 3. | 1981 | $1,509,078.67 |
| 4. | 1982 | $2,591,878.92 |
| Total | | $5,220,415.09 |

On March 20, 2006, the plaintiff commenced this action for wrongful levy pursuant to 26 U.S.C. § 7426. The plaintiff seeks an injunction preventing the IRS from executing a levy on the funds in the escrow account, and she named the IRS and Pratt-Thomas as defendants. Pratt-Thomas subsequently commenced an interpleader action against the plaintiff, the IRS, and Mr. Atkins, who Pratt-Thomas joined as a third-party defendant. Pratt-Thomas deposited the entire amount held in the escrow account with the Court, which totaled $2,657,005.58.

On May 26, 2006, the IRS filed a motion for summary judgment requesting the disbursement of the funds deposited with the Court to the IRS. The plaintiff opposed the motion and filed a cross motion for summary judgment seeking an order preventing the IRS from collecting the funds until the plaintiff and Mr. Atkins exhaust all remedies to reduce or eliminate the marital tax debt. Pratt-Thomas filed a limited objection to the government's motion to disburse the funds. Pratt-Thomas claims it is entitled to management fees, which includes attorney's fees related to this action, from the fund before disbursement.

On June 22, 2006, the plaintiff filed a petition in Tax Court challenging her liability to

---

[1] The parties have indicated that the entire amount of funds deposited with the Court are the proceeds from the sale of the house.

the IRS for the 1981 tax debt. On July 19, 2006, this Court heard the cross motions for summary judgment and Pratt-Thomas's initial request for management fees. The Court took the cross motions for summary judgment under advisement. The IRS agreed that Pratt-Thomas was entitled to management fees before disbursement of the fund. However, the IRS disputed whether the attorney's fees connected with this litigation were management fees and could be paid from the fund. The Court held that the issue of attorney's fees must be resolved pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure, which requires a party to file a petition for attorney's fees after judgment is entered.

On July 19, 2006, the plaintiff filed a motion to depose Mr. Atkins. On July 24, 2006, the plaintiff filed a reply to the IRS's opposition to her motion for summary judgment. On July 26, 2006, with the consent of the IRS, the Tax Court issued an order holding that the plaintiff was not liable to the IRS for the 1981 tax liability. On August 7, 2006, the IRS filed an opposition to the motion to depose Mr. Atkins. On September 21, 2006 the IRS notified the Court that it had commenced an action on September 13, 2006, in the United States District Court for the Western District of North Carolina seeking a judgment that Mr. Atkins is indebted to the IRS for the 1978,1979,1981, and 1982 tax assessments in the amount of $5,601,595.00.

On December 13, 2006, Pratt-Thomas filed a motion for summary judgment that it is entitled to attorney's fees related to its management of the escrow account and that it should be dismissed from the action. As of this date, neither the IRS nor the plaintiff have responded.

I.      Wrongful levy

The plaintiff has brought this action under 26 U.S.C. § 7426(a). Section 7426(a) provides:

> If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.  Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary.

To bring an action under section 7426(a), a person must show:

> (1)    An interest in, or lien on, such property which is senior to the interest of the United States; and
> (2)    Such property was wrongfully levied upon.

26 C.F.R. § 301.7426-1(a)(1)(i).  A levy is wrongful if "(1) the levy is upon property in which the taxpayer had no interest at the time the lien arose or thereafter; or (2) the levy or sale pursuant to levy will or does effectively destroy or otherwise irreparably injure [a third party's] interest in the property which is senior to the Federal Tax lien."  Bregman, Berbert & Schwartz, LLC v. United States, 145 F.3d 664, 668 (4th Cir. 1998).

State law governs questions of who has or had a property interest in the property at the time of the levy and the nature of that interest, but federal law governs questions of priority between conflicting interests in the levied property.  Bregman, Berbert, & Schwartz, 145 F.3d at 668.  Consequently, the Court must apply South Carolina law to determine the nature of the property interests in the escrow account.

    A. The parties' property interest in the escrow account.

The IRS has filed a lien against Mr. Atkins and served a notice of its intent to levy the escrow account.  The IRS stands in the shoes of the taxpayer, and it can only assert the interest the taxpayer has in the property.  *See* 26 U.S.C. §  6331(a)("the Secretary may levy upon all rights of property belonging to [taxpayer]").  The IRS asserts Mr. Atkins's interest in the proceeds deposited in the escrow account.

The IRS contends that the award grants Mr. Atkins the right to use the full amount of proceeds deposited in the escrow account, if necessary, to pay the marital tax debt.[2] The plaintiff argues that the award prevents payment of the tax debt until she and Mr. Atkins exhaust their remedies to reduce or eliminate the debt.

B.  The standard for summary judgment

Summary judgment is proper if the evidence on file show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)(citing Fed. R. Civ. P. 56(c)).  A court may, as a matter of law, interpret and enforce an unambiguous instrument.  Hawkins v. Greenwood Development Corp., 493 S.E.2d 875, 898 (S.C. Ct. App. 1997).  An instrument is unambiguous if it is susceptible to only one reasonable interpretation.  Id.  If two reasonable interpretations of an instrument exist, then it is ambiguous, its interpretation is a factual matter, and a court should deny summary judgment.  Id.

C.  Rules to construct an arbitration award

The primary objective when interpreting an award is to determine the intent of the arbitrator.  *See* Weil v. Weil, 382 S.E.2d 471, 474 (S.C. Ct. App. 1989)(interpretation of judgment).[3]  A court determines intent from all parts of the document and not from isolated provisions.  Id.  If the language is plain and unambiguous, there is no room for interpretation,

---

[2] The IRS agrees that it does not have the authority to levy the plaintiff's residual share of the escrow account for payment of Mr. Atkins's tax liability incurred during the 1978 and 1979 tax years.  Def's Br. in Opp'n to Pl's Cross-Mot. for Summ. J. p. 8, n. 5.

[3] The parties do not cite authority setting forth the rules for construction of arbitration awards.  The most analogous document to an award is a judgment.  Consequently, the Court applies the rules for the construction of a judgment to the construction of the award.

and the effect of the document must be declared based on the literal meaning of the language used. Id.

    D.  Interpretation of the award

        1.      The award grants Mr. Atkins the right to use the full amount of proceeds, if necessary, to satisfy the marital tax debt.

The following provisions are undisputed and unambiguous. The 1981 and 1982 tax debt is marital debt, and the plaintiff and Mr. Atkins are jointly liable for the payment of the marital tax debt. Arbitration award, § II(B)(9)(g), p. 26. The award deems the house located in Charleston as marital property and ordered it sold. At the request of the plaintiff and Mr. Atkins, the award directs the plaintiff and Mr. Atkins to use the proceeds from the sale of the house to pay the marital tax debt. Arbitration award, § II(B)(1)(i), p. 13. The plaintiff and Mr. Atkins are entitled to the proceeds remaining after the marital tax debt is satisfied. Arbitration award, § II(B)(4)(d), p. 19.

The only reasonable interpretations of these provisions is that the arbitrator intended for the plaintiff and Mr. Atkins to use the full amount of proceeds, if necessary, to pay the marital tax debt and that the parties could not access the proceeds for their own use until the debt was paid or eliminated.

        2.      The award required the plaintiff and Mr. Atkins to authorize Pratt-Thomas to use the proceeds to pay the marital tax debt upon Pratt-Thomas's receipt of the proceeds.

The award contains the following provision regarding the use of the proceeds to pay the marital tax debt:

> To the extent that the Marital Tax Debt is not paid out of closing by virtue of existing IRS liens, the parties are directed to authorize [Pratt-Thomas] to apply the net proceeds from the sale of the Marital Residence toward payment of the Marital Tax Debt upon

receipt of such funds by [Pratt-Thomas].

The clear and unambiguous meaning of this language is that the arbitrator intended for the plaintiff and Mr. Atkins to apply the proceeds toward payment of the marital tax debt either at closing or when Pratt-Thomas received the proceeds.

> 3. The plaintiff's interpretation that the award require the proceeds to be held in the escrow account until the plaintiff and Mr. Atkins exhaust their remedies to reduce or eliminate the marital tax debt is unreasonable.

The plaintiff argues the following provisions require the proceeds to be held in escrow until the plaintiff and Mr. Atkins exhaust their remedies to reduce or eliminate the marital tax debt:

> The income tax debt, including original taxes, interest, and penalties, related to the 1981 and 1982 tax years, are inseparably connected with the Husband's earnings from such tax years, as such earnings clearly benefitted the marriage. Even though the taxes are overdue, the principle behind the rule which governs the issue is the same.[4] Therefore, I find that the tax debt **as might ultimately be determined to exist** (including the original tax, interest, and penalty), related to the parties' jointly filed 1981 Federal Income Tax Return and the Husband's 1982 Federal Income Tax Return, is "Marital Tax Debt" to be equally shared by the parties.

Arbitration award, § II(B)(9)(g), p. 26 (emphasis added).

> It is anticipated that the parties, or either of them, may continue to pursue their respective rights to compromise, eliminate, and/or establish the amount of the tax obligation from such tax years. Until such time as the Marital Tax Debt is **established with finality** and paid in full, no proceeds from the sale of the Marital Residence shall be disbursed to either party. To the extent that the Marital Tax Debt is not paid out of closing by virtue of existing IRS liens, the parties are directed to authorize [Pratt-Thomas] to apply the net proceeds from the sale of the Marital Residence toward payment of the Marital Tax Debt upon the receipt of such funds by Pratt-Thomas.

Arbitration award, § II(B)(9)(i), p. 27 (emphasis added).

---

[4] This rule requires a spouse who benefits from profits incurred in the pursuit of marital wealth should also share the losses. Arbitration award, § II(B)(9)(f), p. 26.

-8-

The plaintiff contends that the arbitrator knew the plaintiff and Mr. Atkins were challenging the amount owed in 1981 and 1982, and he intended to hold the proceeds in escrow until the challenges were final. However, the provisions presented by the plaintiff do not expressly require the plaintiff and Mr. Atkins to hold the proceeds in the escrow account until the challenges to the marital tax debt were final. Conversely, as described above, the clear language of the award requires the parties to authorize Pratt-Thomas to apply the proceeds toward payment of the marital tax debt upon its receipt of the proceeds. A court does not have the authority to modify terms that are clear and unambiguous on their face. Messer v. Messer, 598 S.E.2d 310, 314 (S.C. Ct. App. 2004). Therefore, the Court must not construct the provisions cited by the plaintiff to subvert the unambiguous terms requiring the use of the proceeds to pay the marital tax debt either at the closing of the house or upon Pratt-Thomas's receipt of the proceeds.

In addition, the only reasonable interpretation of the language defining marital tax debt as debt that "might ultimately be determined to exist" is that the arbitrator intended to hold the plaintiff and Mr. Atkins jointly liable for the final amount owed for the marital tax debt. The language does not indicate an intent to stay the plaintiff's liability for the marital tax debt until the challenges to the debt were final.

Moreover, the award allows the plaintiff and Mr. Atkins to equally divide the proceeds remaining after the payment of the marital tax debt. The award prohibits disbursement of the proceeds to "either party" before the marital tax debt is "established with finality and paid in full." The only reasonable interpretation of the language "established with finality and paid in full" is that the arbitrator intended to prevent the plaintiff and Mr. Atkins from accessing their

-9-

residual interest in the proceeds until the marital tax debt was eliminated and paid in full. The Court holds that the language cited by the plaintiff does not create an ambiguity in the award.

   4. Conclusion

The plain language of the award indicates the arbitrator's intent to authorize the use of the full amount of the net proceeds to satisfy the marital tax debt, and the plain language indicates the arbitrator's intent that the plaintiff and Mr. Atkins use the proceeds to pay the marital tax debt upon the sale of the house. The award prevents the plaintiff and Mr. Atkins from accessing their residual interest in the proceeds before the plaintiff and Mr. Atkins exhaust their remedies to reduce or eliminate the marital tax debt or before they pay the marital tax debt in full. Therefore, the full amount of the proceeds placed in the escrow account are available to Mr. Atkins for the purpose of paying the marital tax debt.[5]

 E. Conclusion

The award provides Mr. Atkins, and consequently the IRS, the authority to access the proceeds from the sale of house to satisfy the marital tax debt. The plaintiff's interest in the proceeds for that purpose is not superior to Mr. Atkins's interest. As a result, section 7426(a) is not available to prevent the IRS from seizing, for the purpose of satisfying the marital tax debt, the funds pursuant to an administrative levy.

---

[5] However, the plaintiff is not jointly liable for the 1978 and 1979 tax liability, and Mr. Atkins cannot access the full amount of the proceeds to pay the non-marital tax liability. Arbitration award, § II(B)(9)(m), p. 28. Only if the proceeds exceed the marital tax liability can Mr. Atkins access his half of the residue to pay the 1978 and 1979 tax liability. The other half of the residue belongs to the plaintiff. Consequently, the IRS's authority to levy the proceeds is limited. The plaintiff is entitled to half of the amount the IRS does not use to satisfy the 1981 and 1982 tax debt.

II.     26 U.S.C. § 6332

Section 6332(a) requires "any person in possession of. . . property subject to levy upon which a levy has been made [to] . . . surrender such property to the Secretary, except such property . . . , [that] at the time of the demand is subject to an attachment or execution under any judicial process." The plaintiff contends that until the marital tax debt is established with finality, the escrow account is under the jurisdiction of the Family Court, and section 6332(a) prohibits the IRS from seizing the funds. However, as explained above, the award allows immediate payment of the funds to satisfy the marital tax debt.

In addition, the award does not state that the Family Court will supervise the disbursement of the funds from the escrow account. Instead, the award directs Mr. Atkins and the plaintiff to use the proceeds in compliance with the terms of the award. Arbitration award, § II(B)(9)(i), p. 27. Consequently, the Court holds that section 6332(a) does not prohibit the levy of the escrow account.

III.  Management fees for Pratt-Thomas

The parties agree that Pratt-Thomas is entitled to $1,113.31 in management fees. As a result, the Court holds that Pratt-Thomas is entitled to the fee prior to the disbursement to the IRS.

In its motion for summary judgment filed on December 13, 2006, Pratt-Thomas requests attorney's fees arising out of its general duties to manage the escrow account independent of this litigation.[6] As the Court stated during the July 19, 2006, hearing, Pratt-Thomas must file a

---

[6] Pratt-Thomas alleges that the attorney's fees amount to $2,334.88, and the fees arise from legal advice provided before the commencement of this action and in connection with Pratt-Thomas's general duties as escrow agent. The Court holds that a petition filed after entry

petition for attorney's fees, pursuant to Rule 54(d)(2)(B), within fourteen days after judgment is entered in this action.[7] Consequently, the Court denies, without prejudice, Pratt-Thomas's request for attorney's fees.

IV.  Conclusion

The Court holds that, as a matter of law, the IRS may levy the escrow account to recover Mr. Atkins's 1981 and 1982 tax liability. The IRS asserts that, as of April 10, 2006, the 1981 tax liability totals $1,520,374.00, and the 1982 tax liability totals $2,953,414.94. Because the marital tax debt exceeds the amount deposited with the Court, the IRS is entitled to the entire amount of the fund minus Pratt-Thomas's management fees. The funds will remain in the custody of the Court for 90 days after the entry of judgment to allow Pratt-Thomas to file a petition for attorney's fees. Fed. R. Civ. P. 54(d)(2). Upon resolution of the petition, the Clerk will disburse to Pratt-Thomas fees it is entitled to, and the Clerk will disburse the remaining amount of the funds to the IRS.

Accordingly, the Court grants the IRS's motion for summary judgment. This action is hereby dismissed. The Court denies, without prejudice, Pratt-Thomas's motion for summary judgment that it is entitled to attorney's fees. Pratt-Thomas's motion for summary judgment that it should be dismissed from the case is moot.

---

of the judgment, which dismisses the case and defines the plaintiff's and IRS's interests in the proceeds, is the most efficient method to resolve the amount of attorney's fees owed to Pratt-Thomas.

[7] The petition must also comply with Local Civil Rule 54.02.

**AND IT IS SO ORDERED**.

_____

March 7, 2007  **C. WESTON HOUCK**
Charleston, South Carolina  **UNITED STATES DISTRICT JUDGE**